UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| WALRUS MASTER FUND LTD., | ) Civil Action No. 08-cv-02404 (DAB) |
| Plaintiff, | ) |
| - vs - | ) **ECF CASE** |
| CITIGROUP GLOBAL MARKETS, INC. | ) |
| Defendant. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS
OF DEFENDANT CITIGROUP GLOBAL MARKETS INC.**

Dated:  April 24, 2008

CITIGROUP GLOBAL MARKETS INC.

Joellen R. Valentine
Office of the General Counsel
388 Greenwich St., 17th Floor
New York, New York 10013
(212) 816-4002

*Attorney for Defendant Citigroup Global
Markets Inc.*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................... 1

STATEMENT OF FACTS ............................................................................. 2

PLEADING REQUIREMENT AND STANDARD OF REVIEW ................................. 5

ARGUMENT ............................................................................................. 7

    I.    STANDING ON ITS OWN, WALRUS IS NOT A PROPER PARTY ......... 7

    II.    PLAINTIFF FAILS TO ALLEGE FRAUD ................................... 8

        A.   Plaintiff has not alleged intent to defraud. ......................... 9

        B.   Plaintiff has not alleged "willful misconduct." ............... 14

    III.   THE COMPLAINT FAILS TO STATE CLAIMS FOR BREACH OF FIDUCIARY DUTY AND NEGLIGENCE .............................. 15

        A.   The claims are preempted by the Commodities Exchange Act. ........ 15

        B.   Plaintiff has failed to state a claim for breach of fiduciary duty. ..... 15

        C.   The negligence claim must be dismissed. ...................... 17

           1.   Plaintiff's claim is barred by contract. ............................. 17

           2.   Plaintiff's claim is barred by the economic loss rule. .......... 18

           3.   Plaintiff has not alleged a distinct duty of care. ................. 19

CONCLUSION ......................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

### CASES

Bell Atlantic Corp. v. Twombly,
    127 S. Ct. 1955 (2007).................................................................. 5, 7, 14

Bissell v. Merrill Lynch & Co., Inc.,
    937 F. Supp. 237 (S.D.N.Y. 1996) ...................................................... 16

Clark-Fitzpatrick, Inc. v. Long Island R.R.,
    70 N.Y.2d 382 (1987)....................................................................... 19

Colnaghi, U.S.A., Ltd. v. Jewelers Protection Servs. Ltd.,
    81 N.Y.2d 821 (1993)....................................................................... 18

County of Suffolk v. Long Island Lighting Co.,
    728 F.2d 52 (2d Cir. 1984)................................................................. 18

De Kwiatkowski v. Bear Stearns & Co.,
    306 F.3d 1293 (2d Cir. 2002).............................................................. 16

DGM Investments, Inc. v. New York Futures Exchange, Inc.,
    265 F. Supp.2d 254 (S.D.N.Y. 2003) ................................................... 15

Dooner v. Keefe, Bruyette & Woods, Inc.,
    157 F. Supp.2d 265 (S.D.N.Y. 2001) ................................................... 18

Europacific Asset Mgmt. Corp. v. Tradescape Corp.,
    No. 03 Civ. 4556 (PKL), 2005 WL 497787 (S.D.N.Y. Mar. 2, 2005)................. 16

Frota v. Prudential-Bache Sec., Inc.,
    639 F. Supp. 1186 (S.D.N.Y. 1986) ...................................................... 6

Glidepath Holding B.V. v. Spehrion,
    No. 04 Civ. 9758 (KMK), 2007 WL 2176072 (S.D.N.Y. July 26, 2007) ...... 11 n.3

Haltmier v. Commodity Futures Trading Commission,
    554 F.2d 556 (2d Cir. 1997)............................................................... 14

Hill v. Bache Halsey Stuart Shields Inc.
    790 F.2d 817 (10th Cir. 1986)............................................................. 14

In Re Crude Oil Commodity Litig.,
    No. 06 Civ. 6677 (NRB), 2007 WL 1946553 (S.D.N.Y. June 28, 2007)....... 6, 7, 9

Int'l Audiotext Network v. Am. Tel. & Tel. Co.,
    62 F.3d 69 (2d Cir. 1995)................................................................................ 3 n.1

Iqbal v. Hasty,
    490 F.3d 143 (2d Cir. 2007)................................................................................ 6

Karasyk v. Marc Commodities Corp.
    770 F. Supp. 824 (S.D.N.Y. 1991) ................................................................ 9, 10

Kleinberg v. Bear Stearns & Co.,
    No. 82 Civ. 2531 (CSH), 1985 WL 1625 (S.D.N.Y. June 13, 1985).................. 11

Maalouf v. Salomon Smith Barney, Inc.,
    No. 02 Civ. 4770, 2003 WL 1858153 (S.D.N.Y. Apr. 10, 2003) ........................ 15

Matsumura v. Benihana Nat'l Corp.,
    No. 06 Civ. 7609 (NRB), 2008 WL 282021 (S.D.N.Y. Jan. 28, 2008).................. 6

Muller-Paisner v. TIAA,
    446 F. Supp.2d 221 (S.D.N.Y. 2006) ................................................................ 15

Official Committee of Unsecured Creditors v. Donaldson, Lufkin & Jenrette
    Securities Corp.,
    No. 00 Civ. 8688 (WHP), 2002 WL 362794 (S.D.N.Y. Mar. 6, 2002)................ 18

Press v. Chemical Investment Srvs. Corp.,
    166 F.3d 529 (2d Cir. 1999)................................................................................ 16

Puckett v. Rufenacht, Bromagen & Hertz, Inc.
    903 F.2d 1014 (5th Cir. 1990).............................................................................. 8

Renner v. Chase Manhattan Bank,
    No. 98 Civ. 926, 2000 WL 781081 (S.D.N.Y. June 16, 2000)............................ 17

Romach v. Chang,
    355 F.3d 164 (2d Cir. 2004)............................................................................. 6, 7

Saxe v. E.F. Hutton & Co., Inc.,
    789 F.2d 105 (2d Cir. 1986)................................................................................ 8

Serova v. Teplen,
    No. 05 Civ. 6748, 2006 WL 349624 (S.D.N.Y. Feb. 16, 2006) ................... 11 n.3

Sommer v. Federal Signal Corp.,
    79 N.Y.2d 540 (1992)........................................................................................ 18

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
      127 S. Ct. 2499, 2509 (2007) ........................................................................ 6, 11

Texas Liquids Holdings, LLC v. Key Bank Nat'l Assoc.,
      No. 05 Civ. 5070 (KMW), 2007 WL 950136 (S.D.N.Y. Mar. 27, 2007) .............. 8

Washington Capital Vents., LLC v. Dynamicsoft, Inc.,
      373 F. Supp.2d 360 (S.D.N.Y. 2005) .................................................................... 9

## STATUTES

Section 1a(20)(A) of the Commodities Exchange Act, 7 U.S.C. § 1a(20)(A) .................. 2

Section 4b of the Commodities Exchange Act, 7 U.S.C. § 6b ................................ *passim*

Pursuant to Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6), Defendant Citigroup Global Markets Inc. ("CGMI") respectfully submits this memorandum of law in support of its motion to dismiss the complaint ("Complaint" or "Compl.") filed by plaintiff Walrus Master Fund LLP ("Walrus"). The Complaint should be dismissed because it fails to allege fraud with the requisite particularity.

## PRELIMINARY STATEMENT

The sole grievance in Plaintiff's suit is that it received an execution price for a futures contract trade which was higher than the price it understood it had received by its own reading of an electronic trade routing system created by Trading Technologies (the "TT" system). (Compl. ¶¶ 2-3, 16.) Although Plaintiff asserts some non-fraud claims (for breach of fiduciary duty and negligence), the gravaman of Plaintiff's complaint is that this higher than expected pricing was the result of fraud perpetrated by CGMI. (Id. ¶¶ 50, 52-55, 57, 61.) Indeed, whether Plaintiff's claims are viable depends upon whether the Complaint sufficiently pleads fraud, because (a) jurisdiction in this Court is premised on an antifraud claim under the Commodities Exchange Act ("CEA"), and (b) the contracts that control any use of the TT system here include exculpatory clauses that limit CGMI's liability to "willful misconduct."

Because Plaintiff's claims sound in fraud, and because Plaintiff has not, and cannot, satisfy the heightened pleading standards that are triggered by its theory of fraud, the Complaint should be dismissed in its entirety. The allegations amount to nothing more than mere speculation that CGMI acted fraudulently, and Plaintiff cannot bolster its speculation with any facts that would make an inference of fraudulent intent by CGMI at

least as compelling as any opposing inference of nonfraudulent intent.  Nor has Plaintiff amplified its Complaint with any facts that would render its claims plausible.

## STATEMENT OF FACTS

CGMI is a registered futures commission merchant ("FCM") headquartered in New York, New York.  (Compl. ¶ 9.)  The CEA defines an FCM as an entity "engaged in soliciting or accepting orders for the purchase or sale of any commodity for future delivery on or subject to the rules of any contract market."  7 U.S.C. § 1a(20)(A).

Plaintiff's relationship with CGMI is governed in part by its "Institutional Futures Account Agreement" ("Futures Clearing Agreement" or "Agreement").  (Compl. ¶ 13.) Plaintiff characterizes this relationship as a prime brokerage relationship, id. ¶ 12, but the Futures Clearing Agreement does not use the word "prime broker."  To the contrary, the Agreement explicitly states that "CGM is acting hereunder solely as a broker for Customer . . ., CGM is not acting as a fiduciary to Customer, and CGM has no discretionary authority or control over the Account."  (Futures Clearing Agreement, Compl., Ex. A, ¶ 3(a).)  There is another party to the Futures Clearing Agreement, Exis Capital Management, Inc. ("Exis").  Exis is described as Walrus's "account manager." (Id., Ex. A, p. 8.)  Pursuant to the Agreement, Exis was "authorized to act on [Walrus's] behalf with respect to the Account, including to receive and give communications, instructions and authorizations . . . ."  (Id., Ex. A, ¶ 15(c).)

The trade at issue in this litigation is an August 17, 2007, limit order to buy 250 S&P 500 E-Mini Futures ("S&P Minis").  (Compl. ¶ 2.)  Plaintiff alleges that it placed the order with a price limit of 1439.75 but received an execution with an average price of 1470.00.  (Id. ¶¶ 2-3, 34, 45.)  The trade was communicated through the TT system, id.

¶ 16, and was executed "during the period of seconds shortly after 8:15:00 a.m.," id. ¶ 28. As Walrus acknowledges, S&P Minis are traded not by "the traditional open outcry method of trading" but are traded "electronically on the CME's Globex electronic trading platform." (Id. ¶ 26.) The TT system routes orders through CGMI's servers directly to the Chicago Mercantile Exchange ("CME") and then routes confirmations from the CME back through CGMI to the customer. (Id. ¶ 18.) An order, as Plaintiff itself emphasizes, is routed through TT in "seconds," "instantly," or even in "milliseconds," and if the order is immediately executable, it will be filled and confirmed in seconds as well. (Id. ¶¶ 2, 28, 32, 33.)

Although Walrus alleges that it communicated its trade to CGMI through the TT system, Compl. ¶ 34, notably absent from the Complaint is a description of the contract governing Walrus's use of the TT system. CGMI did not grant Walrus a right to use the TT software, but it did grant such a license to Exis, Walrus's account manager. Pursuant to the Software License Agreement ("License Agreement"), Exis could use TT for its own accounts or for the accounts of authorized third parties.[1] Walrus has not explicitly pled that it was such an authorized third party, but in the Futures Clearing Agreement, Walrus granted Exis authority to give instructions on Walrus's behalf. (Futures Clearing

---

[1] Exis's Software License Agreement, which is attached to the Declaration of Joellen R. Valentine as Exhibit 1, can be considered for purposes of this motion because the use of the TT system is central to Plaintiff's claims against CGMI and documents controlling its use are integral to the Complaint. See Int'l Audiotext Network v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a document . . . which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgement.") (citations and internal quotations omitted). Under the License Agreement, CGMI granted Exis a non-exclusive and non-transferable right to use the TT software, but Exis's use was limited "solely to enter orders and receive trade confirmations: (a) for its own accounts; or (b) for the account(s) of third-parties who have provided [Exis] with written authorization to enter orders for their account(s)" and who have executed a Futures Clearing Agreement with CGMI. (License Agreement, Ex. 1, ¶ 3.)

Agreement, Compl., Ex. A, ¶ 15.)  Walrus also assumed liability for any transactions resulting from its instructions to Exis.  (Id.)

Exis's license to use TT mandated that any orders placed for authorized third parties would be controlled by Exis's License Agreement.  (See, e.g., License Agreement, Ex. 1, ¶ 3 (any third party will "enter[] into and will keep in force . . . one or more Institutional Futures Account Agreement ('Futures Clearing Agreement') . . . with CGMI . . and [the software license agreement] *shall amend and supplement the terms of all such Futures Clearing Agreements.*") (emphasis added).)  The License Agreement limits liability for losses or damages arising out of the use of the TT system to ones caused by "*willful misconduct* of CGMI in acknowledging or processing orders entered through" TT.  (License Agreement, Ex. 1, ¶ 12 (emphasis added).)

On August 17, 2007, Walrus claims it entered several orders to buy S&P Minis.  In particular, Walrus asserts that shortly after 8:15 a.m., it first placed an order for 50 S&P Minis with a limit of 1439.75 and then placed one for 250 S&P Minis with the same limit.  The Complaint alleges that both orders were "instant[ly]" confirmed.  (Compl. ¶¶ 33, 34.)  Walrus concedes that during the morning of August 17, "there had been a dramatic increase in the average price of S&P Minis."  (Id. ¶ 38.)  On August 20, 2007, Walrus alleges that it received its account statements from CGMI and learned that CGMI's records did not match Walrus's.  (Id. ¶ 41.)  In particular, Walrus claims that the execution price for the 250 S&P Minis was 30 points higher than the execution price it believed it had received.  (Id. ¶ 48.)

The Complaint includes no facts which suggest or support a plausible inference that any "willful misconduct" by CGMI caused the higher than expected execution on

Walrus's limit order.  Instead, Plaintiff's assertion that CGMI substituted another investor's execution for Walrus's with willful and fraudulent intent is nothing more than speculation.  The Complaint includes no facts that would make this speculative inference at least as compelling as any opposing inference of nonfraudlent intent, such as an error in the TT system, an error in the CME's Globex electronic trading system, or an operator error by a Walrus trader.  Nor does the Complaint include allegations of fact that would make Plaintiff's speculative conclusion plausible.

During the seconds in which the trade at issue was allegedly entered and confirmed, the only conduct attributed to CGMI is that CGMI "confirmed to Walrus that the order had been executed."  (Compl. ¶ 2).  In conclusory fashion, Walrus alleges that this representation was false, id. ¶ 53, that CGMI knew it was false when made, id. ¶ 55, and that it was false because CGMI "substituted Walrus's execution on its limit order . . . with another investor's execution," id. ¶ 54.  Walrus bases all its claims on this allegedly false confirmation and its speculative, unsupported conclusion that CGMI substituted another investor's order with Walrus's.

## PLEADING REQUIRMENTS AND STANDARD OF REVIEW

On a motion to dismiss, a court must accept as true the factual allegations contained in the complaint, but a plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007) (citations omitted). Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id.  Plaintiff must allege "enough facts to state a claim of relief that is plausible on its face." Id. at 1974.  In the Second Circuit, a pleader must "amplify a

claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007).

In addition to meeting Twombly's pleading requirements, the Complaint's fraud claims must satisfy the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. All fraud claims must be pled with particularity, meaning that the Complaint must: (1) specify the allegedly fraudulent statements; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent. See Fed. R. Civ. P. 9(b); see also Romach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004); Matsumura v. Benihana Nat'l Corp., No. 06 Civ. 7609 (NRB), 2008 WL 282021, at * 4-*5 (S.D.N.Y. Jan. 28, 2008) (dismissing claims where complaint failed to plead knowledge and scienter). Additionally, an inference of fraudulent intent must be "at least as compelling as any opposing inference of nonfraudulent intent." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2509 (2007); see also In re Crude Oil Commodity Litig., No. 06 Civ. 6677 (NRB), 2007 WL 1946553, at *7 n.5 (S.D.N.Y. June 28, 2007) (applying Tellabs scienter pleading requirements under Rule 9(b)).

This heightened pleading standard applies not only to Plaintiff's CEA and fraud claims but to the rest of Plaintiff's claims as well. Rule 9(b) applies whenever "the wording and imputation of the complaint are classically associated with fraud[.]" See Rombach, 355 F.3d at 171-72 ("[C]laims that do rely on averments of fraud [and sound in fraud] are subject to the test of 9(b)."); Frota v. Prudential-Bache Sec., Inc., 639 F. Supp. 1186, 1193 (S.D.N.Y. 1986) (Rule 9(b) "extends to all averments of fraud or mistake, whatever may be the theory of legal duty -- statutory, common law, tort, contractual, or fiduciary"). Here, the only conduct alleged is that CGMI falsely

6

confirmed Walrus's trade, Compl. ¶¶ 52, 53, 61, 66, and fraudulently "substitut[ed] Walrus's execution . . . with another investor's execution," id. ¶¶ 54, 61. Plaintiff makes "little, if any, effort to differentiate their asserted [] claim[s] from the fraud claim which permeates the complaint." Rombach, 355 F. 3d at 171-72 (citations omitted). Indeed, each Count repeats and realleges the fraud allegations. Having pled fraud in each and every claim, Plaintiff must satisfy Rule 9(b)'s pleading requirements for each and every claim. Id. at 172.

For each claim, Plaintiff must therefore allege "plausible grounds to infer" that its allegation of CGMI's fraudulent or "willful misconduct" rises "above the speculative level," Twombly, 127 S. Ct. at 1965, and that the inference of fraud is "at least as compelling as any opposing inference of nonfraudulent intent," Tellabs, 127 S. Ct. at 2509; In re Crude Oil Commodity Litig., 2007 WL 1946553, at *7 n.5. Whether CGMI "cheated or defrauded . . . Walrus", "willfully deceived," or "had a fiduciary relationship" with plaintiff are not "factual issues" at all, but instead are legal issues that this Court must decide (not accept as true) on a motion to dismiss. See, e.g., Twombly, 127 S. Ct. at 1965 ("on a motion to dismiss, courts 'are not bound to accept as true legal conclusions couched as a factual allegation'") (citation omitted).

## ARGUMENT

## I.  STANDING ON ITS OWN, WALRUS IS NOT A PROPER PARTY

The Complaint should be dismissed because Plaintiff, standing on its own, is not a proper party to the litigation. The Complaint concerns the execution of a trade through the electronic TT trading system. If Walrus placed its trade through TT directly, as it has pled, it did so without a license to use the TT software, and accordingly, has no legal

grounds on which to complain about the execution. <u>See</u>, <u>e.g.</u>, <u>Texas Liquids Holdings,</u> <u>LLC v. Key Bank Nat'l Assoc.</u>, No. 05 Civ. 5070 (KMW), 2007 WL 950136, at *1 (S.D.N.Y. Mar. 27, 2007) (dismissing claims arising out of contract where plaintiffs were not parties to the agreement).

As described above, CGMI granted Exis a right to use the TT service, but only for Exis's own accounts or for the accounts of authorized third parties. Walrus has not pled that it was such an authorized third party. In the Futures Clearing Agreement, attached as Exhibit A to the Complaint, Exis is identified as Walrus's Account Manager but Walrus has not alleged any role by Exis in the August 17 trade. Absent allegations that Walrus had a license to use TT or allegations that another, such as Exis, had a license to use the system on its behalf, Walrus cannot assert any claims against CGMI standing on its own.

## II.    PLAINTIFF FAILS TO ALLEGE FRAUD

Even if Plaintiff was a proper party to pursue these claims, Plaintiff has failed to allege fraud with particularity. The Complaint includes two fraud claims. First, Plaintiff alleges that CGMI violated the antifraud provision of the CEA - § 4b. (Compl. ¶¶ 49 - 50.) Second, Plaintiff brings a claim for common law fraud. (<u>Id.</u> ¶¶ 51-57.) The elements of a § 4b claim are derived from the common law action for fraud. <u>See</u> <u>Puckett</u> <u>v. Rufenacht, Bromagen & Hertz, Inc.</u>, 903 F.2d 1014, 1018 (5th Cir. 1990) (citations omitted); <u>see</u> <u>also</u>  <u>Saxe v. E.F. Hutton & Co., Inc.</u>, 789 F.2d 105, 109 (2d Cir. 1986) (comparing the language of § 4b of the CEA to Rule 10b-5 and describing its purpose as "declar[ing] it to be unlawful for any person to deceive or defraud any other person" in connection with the sale of any futures commodity). Thus, for both its CEA claim and common law fraud claim, Plaintiff must allege:  (1) a material representation or omission

of fact; (2) falsity of that representation; (3) intent to defraud; (4) plaintiff's reasonable reliance; and (5) resulting damage to the plaintiff.  See Washington Capital Vents., LLC v. Dynamicsoft, Inc., 373 F. Supp.2d 360, 365 (S.D.N.Y. 2005).

As set forth below, plaintiff has not adequately alleged the elements of either fraud claim with the particularity required under Fed. R. Civ. P. 9(b).  See Karasyk v. Marc Commodities Corp., 770 F. Supp. 824, 829 (S.D.N.Y. 1991) (applying Rule 9(b) to plaintiff's § 4b and common law fraud claims).

**A.    Plaintiff Has Not Alleged Intent to Defraud.**

Plaintiff has not adequately alleged that CGMI acted with intent to defraud Walrus.  Although Plaintiff need not plead intent with particularity, "this relaxation of Rule 9(b) is not a 'license to base claims of fraud on speculation and conclusory allegations.'"  In re Crude Oil Commodity Litig., 2007 WL 1946553, at *8 (citation omitted).  Even where a complaint identifies statements alleged to be false, the complaint may "still fail Rule 9(b) scrutiny if the complaint does not allege circumstances giving rise to a strong inference that defendant knew the statements to be false and intended to defraud plaintiff."  Karasyk, 770 F. Supp. at 829 (citations omitted).  A plaintiff can establish this "requite 'strong inference' of fraud . . . either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  In re Crude Oil Commodity Litig., 2007 WL 1946553 at *8 (citing Lerner v. Fleet Bank, N.A., 459 F .3d 273, 290-91 (2d Cir.2006)).  Plaintiff has failed to satisfy either pleading requirement.

First, Plaintiff has not, and cannot, allege "motive and opportunity" for CGMI to commit fraud. CGMI had nothing to gain by executing Plaintiff's order at a higher price. Plaintiff has not, and could not, allege that CGMI was the seller of the S&P Minis, nor has Plaintiff alleged that CGMI earned higher commissions based on a higher execution price – which it did not. The Complaint offers no explanation of why CGMI would substitute Plaintiff's execution with the execution of another investor's trade. Moreover, by Plaintiff's own allegations, CGMI did not have an opportunity to commit such a substitution. Plaintiff itself emphasizes that these S&P Mini trades take place on an electronic system and occur in "seconds" or "milliseconds." (Compl. ¶¶ 2, 28, 32, 33.) Plaintiff alleges that CGMI knew its confirmation of the more favorable execution price was false when made, meaning that CGMI would have had to known in those "seconds" or "milliseconds" that the trade had not been executed at the price represented.

Nor does Plaintiff allege "strong circumstantial evidence of conscious misbehavior or recklessness." "[W]here a . . . defendant's motive to defraud is not apparent, the strength of the circumstantial allegations must be correspondingly greater." <u>Karasyk</u>, 770 F. Supp. at 830. Plaintiff offers no such circumstantial support for its speculative theory of fraud. Even on a generous reading of the Complaint, Plaintiff offers nothing more than conclusory accusations. Plaintiff summarily asserts that CGMI "cheated or defrauded" Plaintiff, "willfully made . . . a false report," "willfully deceived . . . Walrus," and "'bucketed' at least one of" Walrus's orders. (Compl. ¶ 50.) Each of these conclusory allegations tracks the language of § 4b but each is nothing more than empty jargon.[2] "Vague parading of jargon, for example, that . . . trades . . . were

---

[2] § 4b of the CEA makes it unlawful for any member of a contract market in connection with any contract of sale of any commodity for future delivery:

'bucketed,' constitutes nothing more than inadequate 'conclusory allegation' of deception or fraud." <u>Kleinberg v. Bear Stearns & Co.</u>, No. 82 Civ. 2531 (CSH), 1985 WL 1625, at *4 (S.D.N.Y. June 13, 1985).  Merely parroting the language of a statute, which is all that the Complaint does, is not sufficient to survive a motion to dismiss.  <u>Id.</u> (dismissing § 4b claim where "an examination of the complaint shows that plaintiffs have done nothing more than parrot the language of the statute").

As the Supreme Court recently held, "[a] complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and *at least as compelling* as any opposing inference one could draw from the facts alleged." <u>Tellabs</u>, 127 S. Ct. 2499, 2510 (2007) (emphasis added).[3]  At best, the Complaint compares Plaintiff's account of its S&P Mini trades on August 17, 2008, Compl. ¶¶ 28-40, to the audit trail provided by CGMI for that same day, <u>id.</u> ¶¶ 41-47, and asserts that the discrepancies between the two accounts constitute evidence of fraud by CGMI, or specifically, that CGMI fraudulently substituted Walrus's trade with another investor's.  But Plaintiff has

---

"(i) to cheat or defraud such other person;
(ii) willfully to make or cause to be made to such other person any false report or statement, thereof, or willfully to enter or cause to be entered for such person any false record thereof;
(iii) willfully deceive or attempt to deceive such other person by any means whatsoever in regard to any such order or contract or disposition or execution of any such order or contract, or in regard to any act of agency performed with respect to such order or contract for such person; or
(iv) to bucket such order, or to fill such order by offsetting the order or orders of any other person . . . ."  (7 U.S.C. § 6b.)

[3] <u>Tellabs</u> construed the statutory "strong inference" requirement under the Private Securities Litigation Reform Act, which was modeled on this Circuit's test for pleading fraud under Rule 9(b).  Accordingly, courts in this District have applied the "strong inference" framework from <u>Tellabs</u> to Rule 9(b) cases outside the PSLRA.  <u>See</u>, <u>e.g.</u>, <u>Glidepath Holding B.V., v. Spehrion Corp.</u>, No. 04 Civ. 9758 (KMK), 2007 WL 2176072, at *10 n.5 (S.D.N.Y. July 26, 2007) (common law fraud); <u>In re Crude Oil Commodity Litig.</u>, No.06 Civ. 6677 (NRB), 2007 WL 1946553, at *7 n.5 (S.D.N.Y. June 28, 2007) (Commodity Exchange Act).  <u>See</u> also <u>Serova v. Teplen</u>, No. 05 Civ. 6748, 2006 WL 349624, at * 8 (S.D.N.Y. Feb. 16, 2006) (The Second Circuit "applies the same standard to fraudulent intent under common law fraud as to pleading scienter in securities fraud.") (citations omitted).

not, and cannot, allege that its inference from these discrepancies – that CGMI committed fraud – is at least as compelling as any opposing inference.

Plaintiff concludes that the differences between the audit trail and Plaintiff's account of the trades support an inference of fraud by CGMI. The Complaint does not allege that the audit trail was falsely created by CGMI, nor does the Complaint allege that it was falsely created by TT, the provider of the electronic trading system. Instead, the allegation is simply that the audit trail and Plaintiff's version of the day's trades "clashed." (Compl. ¶ 43.) But when determining why the two clashed, there are at least two opposing inferences that a reasonable person would deem more compelling than Plaintiff's inference.

First, there could have been some malfunction in the electronic trading systems being used. The TT system may not have worked properly that morning and, accordingly, as Plaintiff entered its orders, the system captured and executed different orders. Similarly, the CME's Globex electronic trading system could have malfunctioned, failing to correctly match orders placed by Plaintiff to other orders placed in the market. Because the trade at issue was executed electronically, and not through the more "traditional open outcry method of trading," id. ¶ 26, it is more compelling, and more plausible, that an error in the electronic execution was attributable, not to CGMI acting as futures broker, but to problems in the electronic platforms. Plaintiff has not, and cannot, allege facts making its inference of fraud by CGMI at least as compelling as this opposing inference of malfunction in the electronic trading systems.

Second, if the "clash" was caused by an error or act of a person, rather than a system failure, the most plausible – and perhaps the only possible – responsible actor was

the trader entering trades on Walrus's behalf into the TT system. As pled, the only individual who made manual entries during the execution of the trades at issue was a trader named Andrew Flug acting on behalf of Walrus. (Compl. ¶¶ 33-34.) The TT system allows a user to enter orders and to enter manual fills in the fill window. Flug not only controlled inputs into TT, but also controlled inputs into the system that generated Plaintiff's profit and loss statements, "Traders Console." (Id. ¶¶ 21, 35.) Accordingly, Flug could cover up any errors he made in placing trades by entering inaccurate fill amounts into the fill window on TT and entering correspondingly inaccurate fill amounts in the Traders Console.

Moreover, August 17 was the kind of day when even slight entry errors by Flug would have had a significant impact because "there had been . . . a dramatic increase in the average price of S&P Minis" during the morning. (Compl. ¶ 38.) According to the audit trail, Compl., Ex. B, Flug placed four orders shortly after 8:15 a.m. Taking the audit trail as the accurate account of the morning's trades, Flug entered a 250 lot order at 8:15:08.177 with a limit of 1425.25. That order was not filled – either because Flug mistakenly entered a lower than desired limit or because he entered the order too late (after the market had moved above his limit price). 38 seconds after placing that order, Flug discovered his error, cancelled the first 250 lot order, and placed a new 250 lot order with a higher limit of 1470.00, consistent with the market price. This order, placed at 8:15:47.708, was immediately filled. Flug could have temporarily masked any losses attributable to his error because he controlled the manual entries into the Traders Console, which generated Walrus's P&L. (Id. ¶ 37.)

If error by a person, rather than an electronic system, caused the dispute here, Flug is the far more likely culprit than any individual at CGMI. He would have been motivated to hide his mistake and would have had an opportunity to do so. Moreover, the circumstantial evidence provides a clear account of what mistakes Flug could have made and what steps he may have taken to cover those mistakes. Plaintiff, either duped by Flug or trying to shift its losses for Flug's mistake, now asserts these baseless fraud claims against CGMI, but absent facts sufficient to show that fraud by CGMI is more compelling than any opposing inference and absent facts sufficient to show that CGMI had the requisite intent to defraud Walrus, Plaintiff's fraud claims are not "plausible on [their] face." See Twombly, 127 S. Ct. at 1974.

### B.    Plaintiff Has Not Alleged "Willful Misconduct."

Plaintiff also fails to allege "willful misconduct" by CGMI, which is fatal to both fraud claims. As noted above, the License Agreement limits liability for losses or damages arising out of the use of the TT system to losses caused by "*willful misconduct* of CGMI in acknowledging or processing orders entered through*" TT. (License Agreement, Ex. 1, ¶ 12 (emphasis added with italics).) § 4b of the CEA is "plainly phrased in terms of fraudulent or willful conduct." Hill v. Bache Halsey Stuart Shields Inc., 790 F.2d 817, 822 (10th Cir. 1986) (internal quotation and citation omitted).

In order to allege willful conduct, the Complaint must allege that CGMI acted contrary to Walrus's instructions and did so knowingly and intentionally. Haltmier v. Commodity Futures Trading Commission, 554 F.2d 556, 562 (2d Cir. 1977) (requiring "knowing, intentional conduct" needed to make "acts wilful [sic], and therefore . . . violations of the statutory prohibition against cheating or defrauding the customer").

Plaintiff must allege that CGMI acted with knowledge that its representation was false and must have done so with intent to defraud or deceive, and as described above, it has not.

## III.    THE COMPLAINT FAILS TO STATE CLAIMS FOR BREACH OF FIDUCIARY DUTY AND NEGLIGENCE

### A.    The Claims Are Preempted by the Commodities Exchange Act.

Plaintiff's claims for breach of fiduciary duty and negligence are preempted by the CEA.  The CEA governs fraud and deception in connection with the sale of commodities, and it is well settled that a private right action for common law claims, the subject matter of which are covered by the CEA, are precluded under New York law. See DGM Investments, Inc. v. New York Futures Exchange, Inc., 265 F. Supp.2d 254, 264 (S.D.N.Y. 2003) (state law claims preempted by CEA because "matters for uniform federal regulation subject to review by the CFTC, [are] not matters for review or adjudication by individual state courts") (citation and internal quotation omitted).  Since these claims are premised upon an alleged misrepresentation by CGMI relating to S&P Minis, i.e., commodities, they are within the purview of the CEA and thus preempted. See id.

### B.    Plaintiff Has Failed to State a Claim for Breach of Fiduciary Duty.

Plaintiff's third claim for breach of purported fiduciary duty, Compl. ¶¶ 58-62, also fails as a matter of law.  To state a claim for breach of fiduciary duty under New York law a plaintiff must allege facts demonstrating: (1) the existence of a fiduciary relationship and (2) a breach of the duty arising from that relationship.  Muller-Paisner v. TIAA, 446 F. Supp.2d 221, 229 (S.D.N.Y. 2006) (dismissing breach of fiduciary duty

claim); Maalouf v. Salomon Smith Barney, Inc., No. 02 Civ. 4770, 2003 WL 1858153, at
*4-5 (S.D.N.Y. Apr. 10, 2003) (same).

Plaintiff cannot establish the existence of a fiduciary relationship with the
Defendant because the relationship is contractual, arising out of the Futures Clearing
Agreement. (Compl. ¶¶ 12 -16.) That agreement explicitly states that "CGM is acting
hereunder solely as broker for Customer . . . , CGM is not acting as a fiduciary to
Customer [Walrus]." (Futures Clearing Agreement, Compl., Ex. A, ¶ 3(a).) To establish
the existence of a fiduciary relationship independent of the contract, Plaintiff must plead
facts demonstrating that CGMI "occup[ied] a position of trust or special confidence . . .
that imposed obligations beyond the express agreements." Europacific Asset Mgmt.
Corp. v. Tradescape Corp., No. 03 Civ. 4556 (PKL), 2005 WL 497787, at *9 (S.D.N.Y.
Mar. 2, 2005) (quoting Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98
F.3d 13, 20 (2d Cir. 1996)). The mere fact of a broker-customer relationship is not
sufficient to establish a fiduciary relationship. It is well settled under New York law that
"[i]n the absence of discretionary trading authority delegated by the customer to the
broker . . . *a broker does not owe a general fiduciary duty to his client*." Bissell v.
Merrill Lynch & Co., Inc., 937 F. Supp. 237, 246 (S.D.N.Y. 1996) (emphasis added);
accord De Kwiatkowski v. Bear Stearns & Co., 306 F.3d 1293, 1302 (2d Cir. 2002);
Press v. Chemical Investment Srvs. Corp., 166 F.3d 529, 536 (2d Cir. 1999). The Futures
Clearing Agreement also explicitly states that "CGM has no discretionary authority or
control over [Plaintiff's] account." (Futures Clearing Agreement, Compl., Ex. A, ¶ 3(a).)
Thus, Plaintiff cannot establish that CGMI owed it a fiduciary duty because Plaintiff does
not, and cannot, allege that CGMI had any discretionary authority in Walrus's trading

generally or that CGMI exercised any discretion in connection with Plaintiff's S&P Mini

trades on August 17. Indeed, the Complaint makes clear that Plaintiff placed the August

17 trades on its own and did so without direction from CGMI. (Compl. ¶¶ 15, 18, 23-24,

30-34, 30-36.)

Plaintiff attempts to avoid well-established limits on CGMI's duties as a broker

by characterizing the Futures Clearing Agreement as a "prime brokerage agreement."

(Compl.¶¶ 12, 59.) Even if Plaintiff subjectively believed that CGMI was its prime

broker and had a fiduciary relationship with it, Plaintiff's subjective belief cannot, as a

matter of law, create a fiduciary relationship that does not otherwise exist. See Renner v.

Chase Manhattan Bank, No. 98 Civ. 926, 2000 WL 781081, at *20 (S.D.N.Y. June 16,

2000) (quoting Kolbeck v. LIT America, Inc., 923 F. Supp. 557, 572 (S.D.N.Y. 1996))

("That plaintiffs may have regarded defendants as their fiduciaries is not enough to

establish a fiduciary duty when that duty otherwise would not exist.").

### C.    The Negligence Claim Must Be Dismissed.

Plaintiff's fourth cause of action for negligence, Compl. ¶¶ 63-67, must be

dismissed because Plaintiff: (i) is precluded from bringing such a claim by contract; (ii) is

precluded from bringing such claim by New York's economic loss rule; and (iii) has not

alleged a duty of care distinct from its contract with CGMI.[4]

### 1.    Plaintiff's Claim is Barred by Contract.

In its bargain to use CGMI as its futures broker and to use the TT system, Plaintiff

agreed to forego any claim against CGMI for simple negligence. (See Futures Clearing

Agreement, Compl. Ex. A, ¶ 12 ("CGM shall have no liability for any loss incurred by

---

[4] It is not clear how exactly plaintiff is claiming defendant acted negligently. In fact, the
"negligence" claim appears to be duplicative of the fraud claims.

customer due to the failure or malfunction of any computer hardware or software or transmission device or service utilized unless such failure or malfunction directly results from CGM's gross negligence or willful misconduct."); <u>see also</u> License Agreement, Ex. 1, ¶¶ 3, 12 (License Agreement amends and supplements the Futures Clearing Agreement and accordingly, CGMI is only liable for "willful miscount by CGMI in acknowledging or processing orders entered through the [TT] Service."))

New York courts enforce unambiguous contractual clauses absolving a party for liability from its own ordinary negligence – such as the exculpatory clauses interposed here. <u>See</u>, <u>e.g.</u>, <u>Official Committee of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Securities Corp.</u>, No. 00 Civ. 8688 (WHP), 2002 WL 362794, at *15 (S.D.N.Y. Mar. 6, 2002) (upholding exculpatory clause absolving party for liability from negligence because "[u]nder New York law, unambiguous contractual clauses absolving a party for liability from its own ordinary negligence . . . are enforceable"); <u>Colnaghi, U .S.A., Ltd. v. Jewelers Protection Servs. Ltd.</u>, 81 N.Y.2d 821, 823, 595 N.Y.S.2d 381, 382 (1993) ("New York law generally enforces contractual provisions absolving a party from its own negligence"); <u>Sommer v. Federal Signal Corp.</u>, 79 N.Y.2d 540, 554, 583 N.Y.S.2d 957, 962 (1992) ("[a]bsent a statute or public policy to the contrary, a contractual provision absolving a party from its own negligence will be enforced").

## 2.      Plaintiff's Claim is Barred by the Economic Loss Rule.

Plaintiff seeks damages for CGMI's unspecified negligent conduct in an amount of at least $378,125.  (Compl. ¶ 67.)  Plaintiff does not allege that it has sustained personal or property damage, but rather Plaintiff complains of purely economic loss.  <u>See County of Suffolk v. Long Island Lighting Co.</u>, 728 F.2d 52, 62 (2d Cir. 1984) (finding

loss to be economic where no injury to person or property alleged).  Plaintiff's claim that

it should have received a lower average price than it did, Compl. ¶¶ 46-47, is a clear

allegation of economic loss.  The longstanding rule in New York law is that economic

loss is not recoverable under a negligence theory.  <u>See</u>, <u>e.g.</u>, <u>Dooner v. Keefe, Bruyette &</u>

<u>Woods, Inc.</u>, 157 F. Supp.2d 265, 285 (S.D.N.Y. 2001) (dismissing negligence claim

where plaintiff alleged only economic harm in the form of lost profits).

### 3.    Plaintiff Has Not Alleged a Distinct Duty of Care.

Plaintiff's negligence claim also must be dismissed because Plaintiff has not pled

a duty of care distinct from or in addition to one allegedly owed in connection with its

contract with CGMI.  Plaintiff alleges that CGMI's purported duty of care arose of out

Walrus's contractual relationship with CGMI.  (Compl. ¶¶ 12, 64-65.)  It is "a well-

established principle that a simple breach of contract is not to be considered a tort unless

a legal duty independent of the contract has been violated.  This legal duty must spring

from circumstances extraneous to, and not constituting elements of, the contract, although

it may be connected with and dependent on the contract."  <u>Clark-Fitzpatrick, Inc., v.</u>

<u>Long Island R.R.</u>, 70 N.Y.2d 382, 389 (1987) (citations omitted).  Plaintiff has failed to

allege any duty owed distinguishable from the contract itself.

## CONCLUSION

For the foregoing reasons, CGMI respectfully requests that the Complaint be dismissed with prejudice.

Dated: New York, New York                     Respectfully submitted,
      April 24, 2008

Citigroup Global Markets Inc.                 Joellen R. Valentine
Office of the General Counsel
388 Greenwich St., 17th Floor
New York, New York  10013


                                              /s/ Joellen R. Valentine

                                              Attorney for Citigroup
                                              Global Markets Inc.

CERTIFICATE OF SERVICE

I, Joellen R. Valentine, a lawyer admitted to practice before this Court, hereby certify that on the 24th day of April, 2008, I filed on the ECF System the foregoing Memorandum of Law in Support of the Motion to Dismiss on behalf of Citigroup Global Markets Inc. and served such filing via the Court's ECF Notification system to the attorney of record in this matter and have further served the party listed below via U.S. mail.

/s/ Joellen R. Valentine

Joellen R. Valentine

**SERVED VIA ECF AND U.S. MAIL**

Francis Bigelow
**Sadis & Goldberg LLP**
551 Fifth Avenue, 21st Floor
New York, New York 10176
(212) 947-3793
Attorneys for Plaintiff
Walrus Master Fund LLP