UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WALRUS MASTER FUND LTD., <br><br> Plaintiff, <br><br> - vs - <br><br> CITIGROUP GLOBAL MARKETS, INC. <br><br> Defendant. | Civil Action No. 08-cv-02404 (DAB) <br><br> **ECF CASE** |

# DECLARATION OF JOELLEN R. VALENTINE

I, Joellen R. Valentine, as an employee of Citigroup Global Markets Inc. ("CGMI"), and holding the position of counsel, declare that the following is true and correct:

1. Exhibit 1 hereto is a true and correct copy of the Software License Agreement dated October 18, 2005, entered into by CGMI and Exis Capital Management.

I declare under penalty of perjury that the foregoing is true and correct.

April 24, 2008

/s/ Joellen R. Valentine
Joellen R. Valentine

CERTIFICATE OF SERVICE

I, Joellen R. Valentine, a lawyer admitted to practice before this Court, hereby certify that on the 24th day of April, 2008, I filed on the ECF System the foregoing Declaration of Joellen R. Valentine on behalf of Citigroup Global Markets Inc. and served such filing via the Court's ECF Notification system to the attorney of record in this matter and have further served the party listed below via U.S. mail.

                /s/ Joellen R. Valentine
                Joellen R. Valentine

**SERVED VIA ECF AND U.S. MAIL**

Francis Bigelow
**Sadis & Goldberg LLP**
551 Fifth Avenue, 21st Floor
New York, New York 10176
(212) 947-3793
Attorneys for Plaintiff
Walrus Master Fund LLP

**EXHIBIT 1**

# CITIGROUP GLOBAL MARKETS INC. FUTURES EXECUTION SOFTWARE LICENSE AGREEMENT

This Futures Execution Software License Agreement (the "Agreement") between Citigroup Global Markets Inc., a New York corporation with its principal place of business at 388 Greenwich St., New York, NY ("CGMI") and **Exis Capital Management, a corporation** with its principal place of business at **875 Third Avenue, 29th floor, New York, NY 10022** ("Client") confirms the terms and conditions governing Client's use of X_TRADER®, X_TRADER WEB™, X_RISK™, or X_QUOTE™ software and associated media, printed materials, and online documentation, along with software and associated media necessary to access and transmit data to CGMI through either CGMI's virtual private network ("VPN") or a dedicated communications line, (collectively, the "Service") provided by CGMI for the purposes described herein. CGMI and Client agree as follows:

1. **Grant of License.** Subject to the terms and conditions herein, Client is granted a non-exclusive and non-transferable right to use the Service exclusively for Client's internal business purposes and on 3 computers ("License"). Client may not share the Service with any other party or use the Service concurrently on more than **three** computers unless otherwise agreed by CGMI in writing. The Service is licensed to Client solely for the purpose of placing orders on futures contracts and options on futures contracts for execution on selected markets as identified in writing from time to time by CGMI. No other right or license regarding the Service is granted to Client.

2. **License Limitations.** In connection with the License granted pursuant to Section 1 hereof, Client agrees that:

   (a) it may not resell, or otherwise transfer, any portion of the Service or the License;

   (b) it may not reverse engineer, decompile, or disassemble any portion of the Service;

   (c) it may not make any copies of any portion of the Service;

   (d) it may not rent, lease, or lend any portion of the Service;

   (e) it may not transfer, sublicense, or assign any right under this Agreement;

   (f) the Service is licensed as a single product and its component parts may not be separated for use on more than one computer; and

   (g) nothing herein conveys or is intended to convey any right, title, or interest in the Service to Client.

3. **Use of Service.** Client shall use the Service solely for its own internal use and in conformity with the terms and conditions of this Agreement. Without limiting the foregoing, Client shall use the Service solely to enter orders and receive trade confirmations: (a) for its own account; or (b) for the account(s) of third-parties who have provided Client with written authorization to enter orders for their account(s) if Client has provided CGMI with evidence of such authorization that is satisfactory to CGMI in its sole discretion. Client represents and warrants that it and, as applicable, any such third parties, has entered into and will keep in force during the term of this Agreement one or more Institutional Futures Account Agreement ("Futures Clearing Agreement") or International Uniform Brokerage Execution Services ("Give-Up") Agreement, or both, with CGMI or an affiliate of CGMI, and this Agreement shall amend and supplement the terms of all such Futures Clearing Agreements or Give-Up Agreements between Client and CGMI. This Agreement, any Futures Clearing

Fax sent by : 2127238988    CITIGROUP    09-25-07 10:51    Pg: 2/8
Case 1:08-cv-02404-DAB    Document 11-2    Filed 04/24/2008    Page 3 of 9

2

Agreement, and any Give-Up Agreement between Client and CGMI or any affiliate of CGMI shall be interpreted and enforced so as to give maximum effect to all provisions in each agreement. However, in the event of any conflict, the terms of this Agreement shall control.

4. **Charges.** Client shall pay to CGMI such charges or fees for the Service as separately agreed to by Client and CGMI, in addition to commissions, charges, fees, mark-ups, mark-downs, and other fees charged pursuant to Client's Futures Clearing Agreement or Give-Up Agreement with CGMI.

5. **Client Responsibilities.** Client acknowledges that it shall be responsible for:

   (a) obtaining and maintaining all hardware and communication services or equipment necessary to connect to CGMI's VPN or to access the Service through a dedicated communications line through CGMI or an affiliate of CGMI, unless otherwise agreed by Client and CGMI;

   (b) installing any software upgrades, updates, or revisions provided by CGMI within a reasonable time after receipt, but in no case longer than five (5) days after receipt;

   (c) maintaining at all times an alternative method or means of executing orders in the event that the Service is unavailable at any time;

   (d) complying with security and other procedures established by CGMI in its sole discretion. Without limiting the foregoing, Client will identify in writing to CGMI each employee or agent of Client who is authorized to use the Service, and Client will prevent any person who is not so identified to CGMI and authorized by Client from using the Service. Client acknowledges and agrees that as part of security procedures, CGMI will provide Client with one or more unique trader identifications and passwords for each employee or agent of Client authorized to use the Service. Client is solely responsible for preserving the confidentiality of all trader identifications and passwords, and will be responsible for the actions of any persons, authorized or unauthorized, who gain access to the Service. In addition, Client will safeguard all Market Data, as defined below, and restrict access to such information to those employees or agents of Client who have a need to know. Client will immediately inform CGMI in writing in the event that any authorized user ceases to be an employee or agent of Client or if authorization previously granted to an individual is otherwise terminated or compromised. Client agrees to indemnify CGMI in accordance with the terms of Section 13 of this Agreement for all loss, expense, or damage that CGMI sustains as a result of any breach of the obligations set forth herein, directly or indirectly caused by Client, or by Client's use of the Service, including, without limitation, any unauthorized access to the Service;

   (e) familiarizing itself and its authorized employees or agents with the operation and features of the Service. Without limiting the foregoing, Client will familiarize itself with and alert its authorized employees and agents to features of the Service designed to minimize the risk of inadvertent or incorrect trade execution, such as but not limited to user-set order limits and dialog boxes or entries providing alerts or requiring verification of commands entered into the system. Client acknowledges and agrees that it assumes sole responsibility for implementing or not implementing, as the case may be, any such features that may be enabled or disabled by Client. Client further acknowledges and agrees that orders, confirmations, and other information transmitted through the Service may be subject to delays; and

   (f) complying with all rules, procedures, customs, or usages of any exchange or market accessed by Client through the Service, and of any self-regulatory organization or government agency with jurisdiction over such exchange or market. Without limiting the forgoing, Client agrees that it will cause all employees and agents of Client who are

authorized to use the System to be familiar with the rules of any exchange on which Client enters orders through the System, and will indemnify CGMI in accordance with the terms of Section 13 of this Agreement for any loss, expense, or damage that CGMI sustains as a result of any failure of Client to comply with such rules.

6. **Limitation on Orders.** Client understands and agrees that it may not use the Service to enter orders for futures and options on futures that exceed limits established from time to time by CGMI and communicated in writing to Client by CGMI, and will cause and ensure that all employees and agents of Client abide by such limits. Client and CGMI may from time to time mutually agree to increase such limits, and CGMI may at any time unilaterally decrease such limits. Any increase or decrease shall be confirmed in writing by CGMI, which writing may be sent to Client by facsimile, e-mail, or other form of electronic communication in addition to the means described in Section 15 of this Agreement.

7. **Right to Monitor and Information Sharing.** Client understands and agrees that CGMI and any third party provider of the Service reserves the right at any time to monitor Client's use of the Service and audit Client's compliance with security procedures established in accordance with Section 5(d) of this Agreement, and that CGMI may have access to Client's premises during normal business hours and upon reasonable notice for this purpose. CGMI may from time to time and at any time share information regarding Client's use of the Service with any of CGMI's parents, subsidiaries, or affiliates, a third party provider/licensor, or any exchange, government agency or self-regulatory organization, for trade processing, risk management, or otherwise as reasonably necessary for CGMI to provide and maintain the Service, and as required by applicable law, order, rule or regulation. Neither CGMI nor any affiliate nor third party shall be liable for the unintended interception of any data or information sent using the Service.

8. **Data Dissemination.** Client understands and agrees that in using the Service it may receive data and other information received from CGMI and/or third parties, including exchanges ("Market Data"). Client acknowledges that all such Market Data shall be proprietary to CGMI or such third parties, and Client shall receive no proprietary rights therein. In connection therewith, Client agrees that it will use Market Data only in connection with the ordinary course of its business and will not use, copy, distribute, re-sell, or otherwise redistribute Market Data to any person except as expressly permitted by CGMI and/or such third party in writing. Client further agrees that its receipt and use of Market Data is subject to the terms and conditions set forth on Exhibit A to this Agreement. Client agrees to defend, indemnify, and hold CGMI harmless in the event Client breaches the terms of this section.

9. **CGMI's Use of Affiliates.** CGMI may make use of affiliates and unaffiliated brokers and third parties in operating or maintaining the Service or performing any obligation under this Agreement. Without limiting the foregoing, Client understands and agrees that it may receive some or all of the Service from an affiliate of CGMI, and may execute and/or clear trades executed through the Service through an affiliate of CGMI or unaffiliated brokers. CGMI will use reasonable care in selecting affiliates or unaffiliated entities, but is not liable for the acts or omissions of such affiliates or unaffiliated brokers.

10. **Client Warranties.** Client represents and warrants that:

    (a) this Agreement is a legal, valid, and binding obligation of Client and is enforceable against Client in accordance with its terms;

Fax sent by : 21272389BB    CITIGROUP    89-25-87 10:53    Pg: 4/8
Case 1:08-cv-02404-DAB   Document 11-2   Filed 04/24/2008   Page 5 of 9

4

    (b) the person executing this agreement on behalf of Client has all authorizations necessary to do so;
    (c) Client has obtained all registrations, authorizations, approvals, and consents required by applicable law in order for Client to use the Service as set forth in this Agreement; and
    (d) all right, title and interest in and to the Service is either owned by CGMI or its third party providers, and nothing herein conveys any interest in the Service to Client.

11. **Limited Remedies, Exclusion of Warranties.** Provided that Client has notified CGMI in reasonable detail and in a timely manner of any problems experienced in use of the Service, CGMI will use reasonable efforts to correct such problems in a reasonable period of time (but without further liability if CGMI is unable to do so). EXCEPT AS EXPRESSLY STATED IN THIS AGREEMENT, THE SERVICE IS PROVIDED "AS IS" AND AT THE CLIENT'S SOLE RISK, AND NEITHER CGMI NOR ANY AFFILIATE OR THIRD PARTY VENDOR OF CGMI MAKE ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION ANY WARRANTY REGARDING THE ACCURACY OR RELIABILITY OF THE MARKET DATA, WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, OR NON-INFRINGEMENT TO CLIENT OR ANY OTHER PERSON OR ENTITY REGARDING THE SERVICE OR ANY INFORMATION CONTAINED IN OR PRODUCED BY THE SERVICE, NOR ANY WARRANTY THAT THE SERVICE OR ANY INFORMATION OR MATERIAL PROVIDED TO CLIENT WILL CONFORM TO ANY DESCRIPTION THEREOF PROVIDED BY CGMI, BE FREE FROM DEFECTS OR ERRORS, OR PERFORM ANY DESIRED OPERATIONS OR FUNCTIONS.

12. **Limitation of Liability.** IN NO EVENT SHALL CGMI, ANY AFFILIATE OF CGMI, OR ANY LICENSOR, PROVIDER, OR VENDOR OF CGMI HAVE ANY LIABILITY TO CLIENT OR ANY OTHER PERSON OR ENTITY FOR LOSSES OR DAMAGES OF ANY KIND ARISING OUT OF CLIENT'S USE OF, OR INABILITY TO USE, THE SERVICE, REGARDLESS OF THE FORM OF ACTION (INCLUDING WITHOUT LIMITATION NEGLIGENCE OR STRICT LIABILITY), WHETHER CGMI HAS BEEN ADVISED OF, OR OTHERWISE MIGHT HAVE ANTICIPATED, THE POSSIBILITY OF SUCH LOSSES OR DAMAGES. Without limiting the foregoing, Client will not hold CGMI, or any affiliate, officer, employee, or agent of CGMI, liable for (a) any error by Client in inputting an order; (b) any error or malfunction occurring on a system or device provided, operated, or maintained by any exchange or clearinghouse; (c) any delay in acceptance, transmission, or confirmation of any order by the Service; (d) rejection of any order by the Service; or (e) the acts or omissions of any third parties or other acts or omissions beyond CGMI's direct control. For the avoidance of doubt, licensors, providers, and vendors of CGMI shall be considered such third parties. The limitations on CGMI's liability contained herein do not apply to willful misconduct by CGMI in acknowledging or processing orders entered through the Service. Client understands and agrees that CGMI shall not be deemed to have received any order until CGMI actually acknowledges receipt thereof. Client further acknowledges and agrees that CGMI is not undertaking to manage money or provide advice with respect to any commodity, futures contract, transaction, or other interest, or to act as a fiduciary with respect to Client or any third party for whom Client may transact.

13. **Indemnification.** Client, at its expense, agrees to defend, indemnify and hold CGMI and any third party software or service provider to CGMI, any affiliate of CGMI, and any of their respective officers, employees, or agents, harmless with respect to any claim, demand, cause of action, debt, loss, damage, expense (including reasonable attorney's fees which shall include the reasonable cost of in-house counsel) or liability arising directly or indirectly from:

Fax sent by : 21272238988    CITIGROUP    09-25-07 10:53    Pg: 5/8
Case 1:08-cv-02404-DAB    Document 11-2    Filed 04/24/2008    Page 6 of 9

5

(a) Client's use of (including use on behalf of any third party) or inability to use the Service; or (b) any breach by Client of any representation, warranty, covenant, procedure, or provision of this Agreement.

14. **Confidentiality.** Each party to this Agreement shall maintain and cause its employees and agents to maintain the confidentiality of any information supplied to, obtained by, or observed by such party in connection with this Agreement or the Service including without limitation, in the case of Client's obligations, the Service, documentation, drawings, specifications, and algorithms related to the Service or business of CGMI (hereinafter "Confidential Information"). Neither party may use any Confidential Information of the other party except as contemplated by this Agreement or disclose Confidential Information of the other party to any other person or entity except if: (a) the Confidential Information becomes known to the public other than through the wrongful act of, or breach of this Agreement by, the disclosing party; (b) the information is rightfully received by the disclosing party from a third party entitled to disclose it and is not otherwise subject to this Agreement; (c) the information is independently developed by the disclosing party without reference to Confidential Information subject to this Agreement; (d) as required to be disclosed by valid court order, subpoena, or civil investigative demand, or by rule or regulation of any agency, exchange, or self-regulatory organization with jurisdiction over the disclosing party; and (e) as to CGMI, in accordance with Section 7 of this Agreement.

15. **Notices.** Any notice or communication permitted or required to be given hereunder shall be in writing and shall be delivered by hand, registered or certified mail, or recognized overnight courier, to the receiving party at the address shown below.

16. **Termination.** Client may terminate this Agreement upon thirty (30) days prior written notice. CGMI may terminate this Agreement and the License granted hereunder upon thirty (30) days prior written notice, except that in the event of any breach by Client of any provision of this Agreement or any representation or warranty made by Client herein, or any material breach by Client of any other agreement between Client and CGMI or any of CGMI's affiliates, CGMI may terminate this Agreement and the License immediately upon notice to Client. Upon termination of the Service for any reason, Client shall immediately cease all use of the Service and destroy or return to CGMI all copies of all tangible parts, and certify in writing to CGMI that it has been destroyed and/or returned and no portion of it remains in Client's possession or control.

17. **Governing Law, Consent to Jurisdiction.** THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO PRINCIPLES OF CONFLICTS OF LAW. IN ANY ACTION BY OR AGAINST CLIENT ARISING OUT OF OR PERTAINING TO THIS AGREEMENT, CLIENT IRREVOCABLY AGREES AND CONSENTS TO THE EXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK AND OF THE FEDERAL COURTS IN THE SOUTHERN DISTRICT OF NEW YORK. CLIENT EXPRESSLY WAIVES ANY RIGHT TO A JURY TRIAL.

18. **Miscellaneous.** (a) Titles and paragraph headings are included only for convenience and are not a part of this Agreement; (b) Except as provided in Section 3, this Agreement and the Exhibits hereto, which are incorporated herein by reference, constitute the sole agreement between the parties as to the subject matter hereof and may be modified only by a written document signed by an authorized representative of both parties; (c) If any provision of this Agreement shall be held to be invalid or unenforceable, the validity or enforceability of the

Fax sent by : 2127738900　　　CITIGROUP　　　09-25-07 10:54　　Pg: 6/8
Case 1:08-cv-02404-DAB    Document 11-2    Filed 04/24/2008    Page 7 of 9

6

remainder of the Agreement shall not be diminished or impaired thereby and the provision shall be construed in a manner to make it valid and enforceable to the fullest extent permitted under applicable law; (d) This Agreement is binding on the parties and their successors and legal representatives in accordance with its terms; (e) This Agreement may not be assigned by either party, and any attempted assignment shall be void, except that CGMI may, upon prior written notice to Client, assign its rights and obligations hereunder to (i) any entity controlling, controlled by, or under common control with CGMI, or (ii) any entity that assumes all or substantially all of the business operations of CGMI through merger, acquisition, or other corporate reorganization; and (f) Client acknowledges that the Service may be subject to restrictions and controls imposed under export control laws of the U.S. or other countries, and therefore Client agrees and certifies that it will not export or ship the Service or any product thereof to (i) any country or region prohibited under such laws and regulations; (ii) any end user who Client knows or has reason to believe will utilize them in the design, development or production of nuclear, chemical or biological weapons; or (iii) any end user who has been prohibited from participating in the U.S.A. export transactions by any federal agency of the U.S.A. government.

19. **Force Majeure.** Without limiting the terms of Section 12, in no event shall CGMI be liable to the Client for any delay or failure to perform hereunder which delay or failure to perform is due to causes beyond the control of CGMI, including, but not limited to, acts of God, terrorism or other acts of the public enemy, acts of the United States of America or any state, territory or political division of the United States of America, or of the District of Columbia, fires, floods, epidemics, quarantine restrictions; and freight embargoes.

20. **No Waiver.** No delay in exercising or failure to exercise any right, power, or remedy of any provision of this Agreement shall constitute a waiver of the same or any of any other provision hereof and no waiver shall be effective unless made in writing and signed by an authorized person of the party against whom enforcement of such waiver is sought.

21. **Remedies Cumulative.** Subject to the express exclusions and limitations set forth herein, all remedies set forth in this Agreement are cumulative and in addition to and not in lieu of any other remedies of a party at law or in equity.

22. **Disclaimer of Partnership or Agency.** The parties acknowledge and agree that each is an independent contractor and not an agent, joint venturer or partner of the other party. This Agreement shall not be construed as constituting either party as a partner of the other party or to create a joint venture or any other form of legal association that would impose liability upon one party for the act or failure to act of the other party or as providing either party with

Fax sent by : 2122238988   CITIGROUP   09-25-07 10:54   Pg: 7/8
Case 1:08-cv-02404-DAB   Document 11-2   Filed 04/24/2008   Page 8 of 9

7

a right, power, or authority (express or implied) to create any duty or obligation on behalf of the other party.

**In Witness Whereof**, the parties have caused this Agreement to be executed by their authorized representatives this **18th** day of **October, 2005**.

Exis Capital Management

By: _____
Name: Andy Heller
Title: COO

Address for Notices:

875 Third Avenue
27th Floor
New York, New York 10022
Attn: George Fajta

Citigroup Global Markets Inc.

By: _____
Name: Michael R. Schaefer
Title: Managing Director

Address for Notices:

388 Greenwich St.
7th Floor
New York, NY 10013
Attn: Exec. Vice President, Online Trading

Fax sent by : 2127798980  CITIGROUP  Case 1:08-cv-02404-DAB   Document 11-2   Filed 04/24/2008   Page 9 of 9   09-25-07 10:54   Pg: 8/8

8

# EXHIBIT A TO CITIGROUP GLOBAL MARKETS INC. FUTURES EXECUTION SOFTWARE LICENSE AGREEMENT

NOTIFICATION REGARDING ACCESS TO EXCHANGE MARKET DATA

As a market user you may obtain access to exchange Market Data available through an electronic trading system, software or device that is provided or made available to you by a broker or an affiliate of such. Market Data may include, but is not limited to, "real time" or delayed market prices, opening and closing prices and ranges, high-low prices, settlement prices, estimated and actual volume information, bids or offers and the applicable sizes and numbers of such bids or offers.

You are hereby notified that Market Data constitutes valuable confidential information that is the exclusive proprietary property of the applicable exchange and is not within the public domain. Such Market Data may only be used for your firm's internal use. You may not, without the authorization of the applicable exchange, redistribute, sell, license, retransmit or otherwise provide Market Data, internally or externally and in any format by electronic or other means, including, but not limited to the Internet.

You must provide upon request of the broker through which your firm has obtained access to Market Data, or the applicable Exchange, information demonstrating your firm's use of the Market Data in accordance with this Notification. Each applicable exchange reserves the right to terminate a market user's access to Market Data for any reason. You also agree that you will cooperate with an exchange and permit an exchange reasonable access to your premises should an exchange wish to conduct an audit or review connected to the distribution of Market Data.

NEITHER THE EXCHANGE NOR THE BROKER, NOR THEIR RESPECTIVE MEMBERS, SHAREHOLDERS, DIRECTORS, OFFICERS, EMPLOYEES OR AGENTS, GUARANTEE THE TIMELINESS, SEQUENCE, ACCURACY OR COMPLETENESS OF THE DESIGNATED MARKET DATA, MARKET INFORMATION OR OTHER INFORMATION FURNISHED NOR THAT THE MARKET DATA HAVE BEEN VERIFIED. YOU AGREE THAT THE MARKET DATA AND OTHER INFORMATION PROVIDED IS FOR INFORMATION PURPOSES ONLY AND IS NOT INTENDED AS AN OFFER OR SOLICITATION WITH RESPECT TO THE PURCHASE OR SALE OF ANY SECURITY OR COMMODITY.

NEITHER THE EXCHANGE NOR THE BROKER NOR THEIR RESPECTIVE MEMBERS, SHAREHOLDERS, DIRECTORS, OFFICERS, EMPLOYEES OR AGENTS, SHALL BE LIABLE TO YOU OR TO ANY OTHER PERSON, FIRM OR CORPORATION WHATSOEVER FOR ANY LOSSES, DAMAGES, CLAIMS, PENALTIES, COSTS OR EXPENSES (INCLUDING LOST PROFITS) ARISING OUT OF OR RELATING TO THE MARKET DATA IN ANY WAY, INCLUDING BUT NOT LIMITED TO ANY DELAY, INACCURACIES, ERRORS OR OMISSIONS IN THE MARKET DATA OR IN THE TRANSMISSION THEREOF OR FOR NONPERFORMANCE, DISCONTINUANCE, TERMINATION OR INTERRUPTION OF SERVICE OR FOR ANY DAMAGES ARISING THEREFROM OR OCCASIONED THEREBY, DUE TO ANY CAUSE WHATSOEVER, WHETHER OR NOT RESULTING FROM NEGLIGENCE ON THEIR PART. IF THE FOREGOING DISCLAIMER AND WAIVER OF LIABILITY SHOULD BE DEEMED INVALID OR INEFFECTIVE, NEITHER THE EXCHANGE NOR BROKER, NOR THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES OR AGENTS SHALL BE LIABLE IN ANY EVENT, INCLUDING THEIR OWN NEGLIGENCE, BEYOND THE ACTUAL AMOUNT OF LOSS OR DAMAGE, OR THE AMOUNT OF THE MONTHLY FEE PAID BY YOU TO BROKER, WHICHEVER IS LESS. YOU AGREE THAT NEITHER THE EXCHANGE NOR THE BROKER NOR THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES OR AGENTS, SHALL BE LIABLE TO YOU OR TO ANY OTHER PERSON, FIRM OR CORPORATION WHATSOEVER FOR ANY INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES, INCLUDING WITHOUT LIMITATION, LOST PROFITS, COSTS OF DELAY, OR COSTS OF LOST OR DAMAGED DATA.