UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WALRUS MASTER FUND LTD., | Civil Action No. 08-cv-02404 (DAB) |
| Plaintiff, | |
| - vs - | **ECF CASE** |
| CITIGROUP GLOBAL MARKETS, INC. | |
| Defendant. | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
THE MOTION TO DISMISS
OF DEFENDANT CITIGROUP GLOBAL MARKETS INC.**

Dated: June 5, 2008

CITIGROUP GLOBAL MARKETS INC.

Joellen R. Valentine
Office of the General Counsel
388 Greenwich St., 17th Floor
New York, New York 10013
(212) 816-4002

*Attorney for Defendant Citigroup Global
Markets Inc.*

In its Opposition Memorandum, Plaintiff maintains that its fraud claims are based not on the alleged August 17, 2007 confirmation of the Disputed Trade, but rather on an alleged misrepresentation on August 20, the following business day.  Plaintiff alleges that on August 17, the Disputed Trade was communicated through the electronic trade routing system TT (the "TT system") and executed on the Chicago Mercantile Exchange's electronic trading platform in accordance with Plaintiff's instructions, which were to fill its order to buy 250 S&P Minis with an average price of less than 1439.75.  On August 20, CGMI allegedly reneged on the August 17 execution of the Disputed Trade at the average price Plaintiff desired and substituted a higher average price, providing an allegedly false audit trail in support of the higher pricing.

Even accepting Plaintiff's allegations as true, the facts alleged are simply not fraud.  According to Plaintiff, CGMI agreed to broker a purchase with an average price of 1439.75, but the next business day claimed it only agreed to broker a purchase with an average price of 1470.00.  When a party disavows a prior agreement, the claim, if any, is breach of contract, not fraud.  In Rotter v. Institutional Brokerage Corp., which is one of two cases that Plaintiff relies on to defend its fraud claims on Rule 9(b) grounds, the court dismissed similarly pleaded fraud claims under Rule 12(b)(6), concluding, "New York law is well established that a fraud claim can not [sic] be based on solely the failure to perform a contractual promise."  Rotter, No. 93 Civ. 3578 (JFK), 1994 WL 389083, at *3 (S.D.N.Y. July 22, 1994) (internal citations omitted).  Even if CGMI never intended to obtain S&P Minis at the lower average price, the allegations are insufficient to support fraud claims as a matter of law and cannot survive a Rule 12(b)(6) challenge.  Id.

The only claim remaining beyond fraud is breach of fiduciary duty.[1]  Because CGMI did not owe Plaintiff a fiduciary duty and the cases relied upon by Plaintiff do not suggest otherwise, the Complaint should be dismissed in its entirety.

## I. WALRUS CANNOT PROCEED WITHOUT EXIS

As explained in CGMI's opening brief, Walrus has no apparent right to use TT services, although its affiliate Exis Capital Management ("Exis"), which is not a party here, had a right to use TT through a License Agreement with CGMI.[2]  Plaintiff's Opposition Memorandum adds factual allegations which are not in the Complaint, including a description of Walrus's relationship with Exis and an assertion that Walrus authorized Exis to enter orders on its behalf through the TT system.  (Opp. Mem. at 2-3.)  By contrast, the Complaint makes no direct reference to Exis, attributes no role to Exis in the trade at issue, and alleges that Walrus executed its own orders through the TT system, which if true, violated Exis's License Agreement.  (Compl. ¶¶ 16, 32-34.)  Notwithstanding Plaintiff's new factual allegations, Walrus cannot proceed without Exis.  The License Agreement plainly provides that only Exis could use the TT system to trade.  Exis had a "non-transferable right to use the Service" and it could "not share the Service with any other party."  License Agreement, ¶ 1.  Although Exis could "enter orders and receive trade confirmation . . . for the account(s) of third-parties," the License Agreement clearly prohibits any direct use by such a third party pursuant to Exis's license.  Id., ¶ 3.

Plaintiff baldly asserts that the License Agreement controlling any use of the TT system "simply has no bearing on Walrus's claims."  (Opp. Mem. at 7.)  But at bottom,

---

[1] Plaintiff consented to the dismissal of the negligence claim on its own initiative after receiving CGMI's motion to dismiss.

[2] A copy of the License Agreement is annexed to CGMI's Memorandum of Law in Support of its Motion to Dismiss, Declaration of Joellen R. Valentine, Exhibit 1.

2

this dispute is about whether the trade instructions entered in the TT system were followed (or conversely, were the case to be litigated beyond this motion, whether the allegations about what instructions were allegedly entered are true). Walrus's claims cannot be separated from Exis's instructions as entered in the TT system, and the Complaint should not survive with Walrus standing on its own.[3]

## II.     PLAINTIFF FAILS TO ALLEGE FRAUD

Plaintiff's only argument in defense of its fraud claims is that it has properly alleged intent and willful misconduct pursuant to Rule 9(b). (Opp. Mem. at 9-16.) Plaintiff's assertion that "CGMI evidently conceded that Walrus has adequately pleaded all elements of both the fraud claim and the CEA claim, except for scienter," id. at 9, is inaccurate. CGMI understood from the pleadings that the alleged misrepresentation occurred on August 17 and not on August 20. Taking the fraud claims as Plaintiff intended to allege them, Plaintiff has failed to satisfy the most basic requirements of Rule 12(b)(6). Instead of alleging a material misrepresentation made with the intent to induce reliance on which Plaintiff relied, Plaintiff attempts to re-style a breach of contract claim as a tort. In addition to failing on Rule 12(b)(6) grounds, CGMI's arguments concerning Rule 9(b) and scienter apply with equal force regardless of the timing of the alleged misrepresentation. The allegations amount to nothing more than mere speculation that CGMI acted fraudulently, and Plaintiff has not amplified its Complaint with facts that render its claims plausible. (Mem. at 9-15.) Both fraud claims should be dismissed.

---

[3] Should the Complaint survive this motion to dismiss, which CGMI respectfully submits it should not, CGMI will seek to join Exis pursuant to Rule 19 of the Federal Rules of Civil Procedure.

3

### A.     The Fraud Claims Fail To Satisfy Rule 12(b)(6).

New York law unambiguously prohibits plaintiffs from re-styling contract claims as fraud claims. Rotter, 1994 WL 389083, at *3 (citing federal and state cases). Plaintiff characterizes the August 20 Audit Trail as an attempt to "undo the more favorable execution price, the true price, that CGMI had confirmed to Walrus on August 17th." (Opp. Mem. at 12 (citing Compl. ¶¶ 43-46, 52-57).) But just as in Rotter, failure to perform a promise is not fraud. In Rotter, plaintiff claimed to have an agreement with his floor broker that any market order would be placed within two minutes. Plaintiff complained that the defendant broker breached that agreement by failing to execute a trade within two minutes resulting in less favorable pricing. The common law fraud claim and the Commodities Exchange Act claim in Rotter were both dismissed pursuant to Rule 12(b)(6), because the failure to perform a promise cannot form the sole basis of a fraud claim even if the defendant never intended to honor its contractual obligation. Rotter, 1994 WL 389083, at *3.

The rule of law described in Rotter applies with equal force to these facts. Plaintiff alleges that instructions were provided through the TT system to buy 250 S&P Minis for a price of not more than 1439.75.[4] (Compl. ¶ 34.) These instuctions passed through the TT system and CGMI's servers to the Chicago Mercantile Exchange's ("CME") Globex electronic trading platform. (Id. ¶¶ 18, 26.) The CME's electronic trading platform would have matched the order to buy with available sellers and, if there were S&P Minis available at the price desired, would have confirmed the trade back

---

[4] As alleged in the Complaint, Walrus provided the instructions about how to execute the trade. Only Exis had a license to do so. Regardless of which entity provided the instructions, the litigation still concerns the breach of a promise to perform the trade as instructed.

4

through CGMI's servers and through TT to Exis (or as pleaded in the Complaint, to Walrus). Plaintiff alleges that on August 17 its instructions were properly relayed to the CME and filled at a price of not more than 1439.75. (Id. ¶ 34.) As Plaintiff alleges it, CGMI promised on August 17 that it would and had facilitated the limit order as requested. Plaintiff claims that on August 20, CGMI reneged on this promise and substituted a price that was higher than Plaintiff's limit. (Id. ¶¶ 41-42.)

Having failed to allege anything more than breach of a promise to execute a limit order within the limit, Plaintiff has failed to satisfy the Rule 12(b)(6) requirements for fraud. Plaintiff has not alleged a false material representation of fact made with intent to defraud on which Plaintiff reasonably relied resulting in damages. See Washington Capital Vents., LLC v. Dynamicsoft, 373 F. Supp.2d 360, 365 (S.D.N.Y. 2005) (elements of fraud). Even accepting that the August 20 Audit Trail was a false representation by CGMI (it, in fact, comes directly from TT), Plaintiff makes no allegation about how it relied on that representation. On even the most generous reading of the Complaint, the only allegation concerning reliance is that Plaintiff "continued to buy and sell S&P Minis for the rest of the day [on August 17]" after receiving confirmation of the 1439.75 average price. (Compl. ¶¶ 34-35.) Even if true, those actions took place three days before CGMI's alleged misrepresentation and cannot support Plaintiff's claims for fraud.

### B. The Fraud Claims Also Fail Because Plaintiff Has Not Alleged Intent to Defraud.

Plaintiff suggests that CGMI relies on a pleading standard for fraud only applicable to cases brought under the Private Securities Litigation Reform Act ("PSLRA"), but the law in the Second Circuit is clear that the standards articulated by CGMI are consistent with recent Supreme Court decisions on pleading requirements, Bell

5

Atlantic Corp. v. Twombly and Tellabs, Inc. v. Makor Issues & Rights, Ltd., and are applicable here. (Mem. at 5-7.) Plaintiff fails to cite any cases since Twombly or Tellabs supporting its position that the Complaint need not allege facts rendering its claim plausible and making the inference of fraudulent intent at least as compelling as any opposing inference.

Perhaps Plaintiff fails to cite such cases because recent law in the Second Circuit confirms that a complaint will be rejected as insufficiently pleaded under Twombly where allegations of knowingly false statements lack facts to overcome the implausibility of those allegations. In Benzman v. Whitman, the Second Circuit considered allegations of knowing falsity as guided by Twombly. According to the court in Benzman, Twombly "somewhat modified the previously applicable standard for assessing the sufficiency of complaints in civil cases and ruled that if a claim was not plausible, it would have to be supported by an allegation of some subsidiary facts to survive a motion to dismiss." Benzman, 523 F.3d 119, 129 (2d Cir. 2008) (citing Twombly and Iqbal v. Hasty, 490 F.3d 143 (2d Cir.2007), cert. pet. pending, 76 U.S.L.W. 3417 (2008) (adopting Twombly "plausibility standard" for civil pleading)). The Court concluded that a "Complaint has not adequately pleaded an allegation of knowing falsity" where "a bare allegation . . . is not plausible in the absence of some supporting facts." Id.

Plaintiff's Complaint is implausible in the absence of some supporting facts. In order to act as Plaintiff suggests, CGMI would have had to interfere both with the TT system used by Plaintiff to enter orders and with the CME's electronic trading platform. Plaintiff offers no facts suggesting that CGMI could plausibly interfere with those electronic trading systems – let alone alter, not just Plaintiff's trade, but the trade of

6

another market participant who sold the S&P Mini contracts to Plaintiff. Beyond the sheer implausibility of these allegations, CGMI had no motive to engage in the alleged conduct. CGMI would gain nothing by switching Plaintiff's allegedly lower execution with another investor's higher priced execution. CGMI was not the seller of the S&P Minis nor did CGMI earn higher commissions on a higher price. (Mem. at 10-14.)

In its Opposition Memorandum, Plaintiff purports to offer three types of supporting facts to bolster its otherwise bare assertion that CGMI "cheated or defrauded" Plaintiff, "willfully made . . . a false report," "willfully deceived . . . Walrus," and "'bucketed' at least one of" Walrus's orders. (Compl. ¶ 50.) First, Plaintiff argues that alleged audit trail irregularities are evidence of fraud, relying on Reddy v. CFTC, 191 F.3d 109 (2d Cir. 1999). (Opp. Mem. at 10-11.) Second, Plaintiff claims that the trade was accomplished above the prevailing market price. (Opp. Mem. at 12.) Third, Plaintiff reaches outside of the Complaint and attempts to offer extrinsic and irrelevant regulatory findings as evidence of a "suspicious pattern of trading." (Id. at 13.)

Each of Plaintiff's proffers of allegedly supporting facts should be rejected. First, Plaintiff misconstrues Reddy in attempt to give substance to its bare allegations about the audit trail. Reddy was a petition for review of two decisions rendered by the Commodity Futures Trading Commission ("CFTC") about artificial trades made by petitioners. The CFTC made actual factual findings about the trades at issue.[5] Reddy, 191 F.3d 109, 115. Contrary to Plaintiff's assertion, the Court made no generalized finding that allegations about "audit trail irregularities" are sufficient to support a fraud claim, and instead, the

---

[5] Plaintiff's reliance on Reddy for the proposition that a court need not weigh nonfraudulent inferences from the facts alleged against Plaintiff's fraudulent inference is similarly misplaced. (Opp. Mem. at 10.) Reddy reviewed the CFTC's findings by considering the adequacy of the evidence and not the adequacy of any pleadings. Reddy, 191 F.3d 109, 117.

7

Court considered audit trail evidence only "in conjunction with" the other facts evidencing fraud. Id. at 118-119. Here, the alleged audit trail "irregularities" – Plaintiff's allegation that it received a trade confirmation that differed from the one recognized by CGMI – more strongly support inferences other than fraud such as an error in the electronic trading systems or by a trader entering instructions. (Mem. at 12-14.)

Second, even accepting Plaintiff's assertion that higher than market execution suggests fraud, the Complaint itself dispels any allegation that the pricing here was above the market. According to the Complaint, the "high price of the day" was "1.50 points" above 1470.00, the price Plaintiff received. (Compl. ¶ 45.)

Finally, suggesting that CGMI engaged in a "pattern of suspicious trading" (an argument, again, misdirected in its reliance on Reddy), Plaintiff asks the Court to take judicial notice of a New York Stock Exchange Hearing Board Decision and a Financial Industry Regulatory Authority enforcement action. (Opp. Mem. at 13.) Such judicial notice, however, is limited "on a motion to dismiss only to establish the existence of the opinion, not . . . the truth of the facts asserted in the opinion," Global Network Communications, Inc. v. City of New York, 458 F.3d. 150, 157 (2d Cir. 2006), and Plaintiff plainly asks the Court to consider the facts asserted therein as true. Worse, despite Plaintiff's attempt to create the illusion of relevance, those proceedings have no bearing on this litigation. Neither involved futures trading on the CME (or any futures exchange) nor the electronic trading systems at issues here. Accordingly, they are not integral to the Complaint and should not be considered. Id. at 156-157.

If any pattern exists on the facts alleged, it is unquestionably a pattern of unsuspicious, rather than suspicious, trading. Plaintiff notes in its Opposition

8

Memorandum that it placed "thousands of orders . . . for over two years through the TT software" with CGMI acting as broker. (Opp. Mem. at 3.) Yet, of those "thousands of orders," Plaintiff only complains about one trade. Moreover, on the day of the Disputed Trade, Plaintiff allegedly bought an additional 550 S&P Minis through TT and CGMI, and has raised no complaints about those executions. (Compl. ¶ 41.) Whether the Disputed Trade is one trade out of thousands over two years or 250 S&P Minis out of 800 purchased on the same trade day, neither makes for a suspicious pattern and neither makes an inference of fraud more compelling.

### III. THE COMPLAINT FAILS TO STATE CLAIMS FOR BREACH OF FIDUCIARY DUTY AND NEGLIGENCE

Plaintiff consents to the dismissal of its negligence claim. In defense of the remaining fiduciary duty claim, Plaintiff argues (1) CGMI owed and breached a duty to consummate the Disputed Trade in accordance with the instructions given and (2) the CEA does not preempt its claim. Both arguments should be rejected.

First, as Plaintiff does not contest, Plaintiff's relationship with Defendant is contractual, arising out of the Futures Clearing Agreement, Compl. ¶¶ 12-16, and that contract explicitly states that "CGM is acting hereunder solely as broker for Customer" and "is not acting as a fiduciary to Customer [Walrus]." (Futures Clearing Agreement, Compl., Ex. A, ¶ 3(a); see also Mem. at 16-17.) CGMI does not owe Plaintiff a general fiduciary duty. A broker for a non-discretionary account like Plaintiff's only owes extra-contractual duties where "special" or unusual circumstances "render a client dependent – a client who has impaired faculties, or one who has a closer than arms-length relationship with the broker, or one who is so lacking in sophistication that de facto control of the account is deemed to rest in the broker." De Kwiatkowski v. Bear Stearns & Co., Inc.,

9

306 F.3d 1293, 1308 (2d Cir. 2002) (emphasis added).  Plaintiff has alleged no such special circumstances here.

Second, contrary to Plaintiff's assertion, allowing the breach of fiduciary duty claim to proceed could "directly affect trading on or the operation of a futures market." DGM Investments, Inc. v. New York Futures Exchange, Inc., No. 01 Civ. 11602 (RWS), 2002 WL 31356352, at *5 (S.D.N.Y. Oct. 17, 2002).  The trade here was executed entirely by electronic trading systems, including the system used by the CME.  (Compl. ¶¶ 18, 26.)  These electronic trading systems and the trades executed on them are within the purview of the CEA and should be subjected to uniform federal regulation.  DGM Investments, 2002 WL 31356352, at *4 (the CEA places "all exchanges and all persons in the industry under the same set of rules and regulations for the protection of all concerned").  Accordingly, Plaintiff's attempt to pursue state law claims is preempted.

Finally, since jurisdiction is premised on the CEA, having failed to state a claim for fraud, the Court should dismiss any remaining state law claims.  United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966).

## **CONCLUSION**

For the reasons stated above, CGMI respectfully requests that the Complaint be dismissed with prejudice.

Dated: New York, New York
       June 5, 2008

CERTIFICATE OF SERVICE

I, Joellen R. Valentine, a lawyer admitted to practice before this Court, hereby certify that on the 5th day of June, 2008, I filed on the ECF System the foregoing Reply Memorandum of Law in Support of the Motion to Dismiss on behalf of Citigroup Global Markets Inc. and served such filing via the Court's ECF Notification system to the attorney of record in this matter and have further served the party listed below via U.S. mail.

/s/ Joellen R. Valentine

Joellen R. Valentine

**SERVED VIA ECF AND U.S. MAIL**

Francis Bigelow
**Sadis & Goldberg LLP**
551 Fifth Avenue, 21st Floor
New York, New York 10176
(212) 947-3793
Attorneys for Plaintiff
Walrus Master Fund LLP